**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, as Subrogee of the Penrose Group, | ) ) ) ) |
| v. | ) Civil No. 1:17-cv-1401 ) ) |
| LESSARD DESIGN, INC.,     Defendant. | ) ) ) |

**MEMORANDUM OPINION**

At issue on a motion for judgment on the pleadings in this breach of contract and quantum meruit case is whether the contractual indemnification provision on which plaintiff's claim is based is invalid pursuant to Virginia Code § 11-4.1. Plaintiff, an insurance company, as subrogee, seeks recovery from defendant of litigation costs in connection with defendant's alleged contractual obligation to indemnify plaintiff's insured. Defendant argues, *inter alia*, that the contractual provision upon which plaintiff relies for its breach of contract claim is void under Virginia law, and that plaintiff has failed to allege a claim on a quantum meruit theory.

The matter has been fully briefed and argued, and is now ripe for disposition.

**I.**

Plaintiff, Travelers Indemnity Company of Connecticut (Travelers), is an insurance company organized and existing under the laws of Connecticut with its principal place of business in Hartford, Connecticut and corporate offices in St. Paul, Minnesota.

Defendant, Lessard Design, Inc. (Lessard), is a corporation organized under the laws of Virginia, with its principal place of business in Vienna, Virginia. Lessard provides architectural services, including design plans and construction supervision and consulting services.

1

PDT Builders LLC (PDT Builders) is a Virginia limited liability company with its principal place of business in Vienna, Virginia. PDT Builders and several other companies do business in an association called the Penrose Group.

This case stems from a previous now-concluded lawsuit in this district in which Humphreys & Partners Architects, LP (Humphreys), another architectural firm, sued Lessard, PDT Builders, and other entities associated with the Penrose Group for copyright infringement. *See Humphreys & Partners Architects LP v. Lessard Design, Inc.*, No. 1:13-cv-433 (E.D. Va. 2013) (hereafter "Humphreys Litigation"). Humphreys argued that Lessard Design's architectural plans infringed on Humphreys' copyrighted design for a condominium building located in Minneapolis, Minnesota. Pursuant to an agreement between Lessard and PDT Builders, PDT Builders tendered its defense to Lessard. After Lessard declined to defend PDT Builders absent conditions, PDT Builders and the other Penrose Group entities tendered their defense to Travelers Indemnity Company of Connecticut, pursuant to the Penrose Group's own Commercial General Liability policy under Policy number Y-630-0454R469-TIL-10. Travelers accepted PDT's tender of defense, and paid the attorneys' fees and costs associated with defense of PDT and related entities in the Humphreys Litigation. By virtue of this, Travelers is subrogated to the rights of its insureds – PDT and the other Penrose entities.

Following thorough discovery, defendants filed a motion for summary judgment, which was granted. *See Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 43 F. Supp. 3d 644 (E.D. Va. 2014). Humphreys thereafter appealed this decision to the Court of Appeals for the Fourth Circuit, which affirmed. *See Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532 (4th Cir. 2015).

Following the Fourth Circuit's affirmance, the prevailing parties sought attorneys' fees in the amount of $990,995. Following full briefing, the district court awarded attorneys' fees in the amount of $792,796. *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 152 F.Supp.3d 503 (E.D. Va. 2015). To avoid further litigation over the fee award, the parties elected to settle the fee dispute for $745,000. This concluded the Humphreys Litigation.

Following the conclusion of the Humphreys Litigation, Travelers, as subrogee for the other Humphreys Litigation defendants, requested that Lessard indemnify Travelers for the outstanding attorneys' fees and costs related to the Humphreys Litigation. This request was based on a January 25, 2011 Architect's Agreement (the Agreement). Specifically § 2.7 of that Agreement provides that Lessard shall:

> [i]ndemnify, defend and hold the Owner, Owner's Developer, and Owner's and Owner's Developer's wholly owned affiliates and the agents, employees and officers of any of them harmless from and against any and all losses, liabilities, expenses, claims, fines and penalties, costs and expenses, including, but not limited to reasonable attorneys' fees and court costs relating to the services performed by the Architect hereunder . . .[1]

Lessard declined Travelers requests for indemnification. Thereafter, Travelers filed the instant complaint alleging: (i) breach of contract, and (ii) quantum meruit. Lessard filed a motion for judgment on the pleadings pursuant to Rule 12(c), Fed. R. Civ. P. The matter has been fully briefed and argued, and is now ripe for disposition.

## II.

The standard for a motion for judgment on the pleadings is identical to the familiar plausibility standard governing motions to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P. *See*

---

[1] Section 2.7.1 of the Agreement largely overlaps with § 2.7, providing that Lessard was required to defend and indemnify the Humphreys defendants "for all damages, losses, or claims that arise as a result, in whole or in part, of the breach of this Agreement or any implied covenants deemed to be applied thereto, intentional acts, omissions, or other failures to perform by [Lessard Design], his employees, his agents, or Consultants."

3

*Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (citing *Frey v. Bank One*, 91 F.3d 45, 46 (7th Cir. 1996)). Accordingly, "judgment should be entered when the pleadings, construing the facts in the light most favorable to the non-moving party, fail to state any cognizable claim for relief[.]" *O'Ryan v. Dehler Mfg. Co.*, 99 F. Supp. 2d 714, 718 (E.D. Va. 2000).

### III.

#### A.

Lessard argues that Travelers has no indemnification right because Virginia Code § 11-4.1[2] operates to invalidate the indemnification provision in the Agreement on which Travelers relies to pursue its breach of contract claim. Section 11-4.1 invalidates indemnification provisions "by which [a] contractor performing" work on "any contract relating to construction" is required to indemnify other parties to the contract for negligence relating to the performance of the contract. Thus, the statute invalidates an indemnification provision if:

> (i) the contract containing the indemnification provision is a "contract relating to construction[,]"
>
> (ii) the indemnifying party is a "contractor[,]" and
>
> (iii) the indemnification provision requires the contractor to indemnify other parties to the contract against liability for damage caused by the other parties' sole negligence.

---

[2] Section 11-4.1 provides as follows:

> Any provision contained in any contract relating to the construction, alteration, repair or maintenance of a building, structure or appurtenance thereto, including moving, demolition and excavation connected therewith, or any provision contained in any contract relating to the construction of projects other than buildings by which the contractor performing such work purports to indemnify or hold harmless another party to the contract against liability for damage arising out of bodily injury to persons or damage to property suffered in the course of performance of the contract, caused by or resulting solely from the negligence of such other party or his agents or employees, is against public policy and is void and unenforceable. This section applies to such contracts between contractors and any public body, as defined in § 2.2-4301.

4

Given these provisions, § 11-4.1's purposes are quite clear. First, the statute is meant to promote construction and building safety by requiring each of the parties involved in construction to bear the costs for their own negligence. Second, the statute prevents prime contractors or other construction entities with leverage over subcontractors from using that leverage to force subcontractors to indemnify primes contractors and others for their negligence. In furtherance of these purposes, the Supreme Court of Virginia has held that contractual indemnification provisions that violate § 11-4.1 are void in their entirety and cannot be narrowed by operation of law.[3] Therefore, if the indemnification provision at issue here falls within § 11-4.1, then the provision is void in its entirety.

The first question concerning whether § 11-4.1 applies to the Agreement is whether the Agreement is a "contract relating to the construction, alteration, repair or maintenance of a building" within the meaning of § 11-4.1. Travelers is undoubtedly correct that under certain circumstances a contract for architectural design services might not qualify as a "contract relating to the construction" of a building. For example, if a builder simply bought a set of plans from an architect and then the builder proceeded to construct the building independently of the architect and without participation of the architect, the sales contract for purchase of the architectural plans plainly would not be a contract relating to construction of a building within the meaning of § 11-4.1. Although the architectural plans in this case relate in the broadest sense to the construction of a building, courts have consistently found contracts related to sale of

---

[3] *See Uniwest Const., Inc. v. Amtech Elevator Servs.*, Inc., 699 S.E.2d 223, 230 (Va. 2010) (opinion withdrawn in part on reh'g on other grounds, 281 Va. 509 (2011)) ("the issue is whether the provision is so broad that it indemnifies the indemnitee from its own negligence. . . . Paragraph 10 clearly reaches beyond the negligence of other parties and indemnifies Uniwest [against its own negligence] . . . Therefore it violates Code § 11-4.1 and is void."). On rehearing, the Supreme Court of Virginia withdrew Part II(D) of its opinion, which dealt with damages, but the Supreme Court of Virginia's holding that a provision violating § 11-4.1 is void in its entirety, and cannot be narrowed by the operation of law, was left undisturbed. *See Uniwest Const., Inc. v. Amtech Elevator Servs., Inc.*, 714 S.E.2d 560 (Mem), 560 (Va. 2011) ("The Court withdraws Part II(D) of its opinion of September 16, 2010.").

materials for use in a construction project, or contracts for rental of construction equipment, too attenuated to constitute "contracts relating to construction . . . of a building" within the meaning of § 11-4.1. An example of this line of cases is *RSC Equip. Rental, Inc. v. Cincinnati Ins. Co.*, 54 F. Supp. 3d 480 (W.D. Va. 2014), where the court held that a contract for rental of construction equipment was not a contract relating to construction.

The Agreement at issue in this case is a different matter; it includes a number of provisions that make clear that Lessard has duties and responsibilities related to the "Construction Phase" of the building process. *See* Agreement § 3.6 *et seq*. Specifically, Lessard was required (i) to "administ[er] …the Contract between the Owner and the [Prime Contractor]" (§ 3.6.1.1), (ii) to visit the Project often enough to be "familiar with the progress and quality" of the work, (iii) "to guard the Owner against defects and deficiencies" (§ 3.6.2.1), and (iv) to "reject Work that does not conform to the Contract Documents" (§ 3.6.2.2). Given that the Agreement imposes these obligations on Lessard, it follows that the Agreement falls squarely within the category of contracts "relating to construction" within the meaning of § 11-4.1.

Seeking to avoid this result, Travelers cites *RSC Equip. Rental, Inc. v. Cincinnati Ins. Co.*, 54 F. Supp. 3d 480 (W.D. Va. 2014), which held that a rental contract for a forklift to be used in a construction project was not a contract relating to construction within the meaning of § 11-4.1. The court reached this result by concluding that "a rental agreement for a forklift is not a construction contract" because the object of the rental agreement was not to construct a building and because the purpose of § 11-4.1, preventing construction site injuries, would not be furthered by invalidating the rental agreement's indemnification provision. *Id.* at 486-87. The case at bar is quite different from the *RSC* case; the contract at issue here, in sharp contrast to the forklift rental contract, relates directly to construction of a building and clearly requires Lessard

to play a supervisory role in ensuring that the architect's plans are faithfully followed during the construction process. Moreover, because Lessard was working for the building Owner and subject to the building Owner's requirements, there is little doubt that Lessard was required to accept Section 2.7 which indemnified PDT and the Owner for PDT and the Owner's own negligent acts, precisely the type of contractual measure the Virginia General Assembly intended to preclude by enacting § 11-4.1. In sum, the Agreement at issue here and the forklift rental agreement at issue in *RSC* are entirely different, and hence the *RSC* case is inapposite, and unpersuasive here.

Travelers also cites an unpublished Fourth Circuit opinion, *Carpenter Insulation & Coatings Co. v. Statewide Sheet Metal & Roofing, Inc.*, No. 90-2426, at *3-11 (4th Cir. July 9, 1991), for the proposition that § 11-4.1 should be read narrowly. Of course, unpublished opinions are not binding precedent, but in any event, *Carpenter Insulation* falls far short of providing persuasive precedent to be applied here. *Carpenter Insulation*, like *RSC*, is readily distinguishable; the contract at issue in *Carpenter Insulation* was for the sale of roofing materials which would ultimately be used "in the business of installing and repairing roofing systems." *Id*. at *3. The Fourth Circuit concluded that this sales agreement for roofing materials was not a "construction contract" within the ambit of § 11-4.1 even though it can be said to relate to construction in an attenuated manner. By contrast, the Agreement, as noted above, explicitly contemplates the architect's involvement in the construction process, and thus the Agreement is clearly a "contract relating to construction" within the meaning of § 11-4.1. Accordingly, the *Carpenter Insulation* case is inapposite and ultimately unpersuasive here.

The second statutory question to be resolved in determining whether § 11-4.1 is applicable here is whether Lessard is a "contractor" within the meaning of § 11-4.1. Travelers

argues that the term "contractor" as used in § 11-4.1 does not include Lessard because Lessard is an architect, not a contractor. But Travelers' attempt to read § 11-4.1 narrowly to apply only to entities that operate solely as construction contractors does not comport with the text or the purposes of § 11-4.1. Under the plain text of the statute, if the contract "relat[es] to" construction of a building, then the party performing the contract is a "contractor" covered by the statute whether or not that party is also an architect. To be sure, the General Assembly could have defined "contractor" narrowly to ensure that § 11-4.1 applied only to entities that did nothing but construction, but it did not do,[4] electing simply to use the term contractor, the ordinary meaning of which is merely "one that contracts or is party to a contract." Merriam Webster Dictionary, "Contractor," http://www.merriam-webster.com/dictionary/contractor. Furthermore, the fact that § 11-4.1 covers contracts "relating to" construction suggests that the General Assembly of Virginia intended to reach beyond construction contractors to include those, including architects, who do other work relating to a contract for construction, repair, or other building-related services.

Other provisions in Virginia law support the reading of § 11-4.1 adopted here. For example, Va. Code § 54.1-1100 defines contractors as persons who do work relating to construction, including "performing, managing, or superintending" construction or improvement of a building. *See* Va. Code § 54.1-1100. This definition is broad enough to include architects involved in the supervision of construction projects such as Lessard was in this case, and suggests that Virginia law recognizes that the term contractors can apply to entities such as architects when they are involved in the management and supervision of construction projects.

---

[4] *See Meeks v. Commonwealth*, 651 S.E.2d 637, 639 (Va. 2007) ("the general rule of statutory construction is to infer the legislature's intent from the plain meaning of the language used. . . . an undefined term must be given its ordinary meaning, given the context in which it is used.").

8

Importantly, § 11-4.1's purpose is furthered by this reading of the term "contractor" which includes entities such as Lessard who by contract are directly involved in the construction phase. In this case, Lessard was required to indemnify the Owner and PDT for the Owner's and PDTS's own negligent acts during construction. The use of leverage to require one contractor to indemnify others for their own negligence is precisely the situation the General Assembly sought to avoid through the enactment of § 11-4.1. If, as Travelers suggests, the statute were read narrowly so as not to apply to entities such as Lessard in the circumstances at bar, then contrary to § 11-4.1's purpose, those entities could be required to bear the costs of the negligence of owners or other contractors in construction, even if the owners or other contractors were solely responsible for the negligent acts. For example, if an owner or contractor demanded a rush on construction, or deviated from the architect's plans in an unsafe way, the architect could be liable for injuries resulting from those negligent decisions, even if the architect actively opposed those decisions during construction. The text and purpose of § 11-4.1 preclude this situation from arising.

Finally, Travelers argues that Lessard's reading of § 11-4.1 is too expansive because many architects engage in the kinds of supervisory activities provided for in the Agreement. As Lessard argues, however, not all architects are as involved in the construction process to the extent required by the Agreement. Some architects provide plans and do not play a role in the construction process in the way Lessard did in this case. Those agreements with architects would not fall within the ambit of § 11-4.1. In sum, the conclusion reached here – that § 11-4.1 operates to invalidate the Agreement's indemnity provision – is consistent with the text and purpose of § 11-4.1.

The final question to resolve in determining whether 11-4.1 applies here is whether the indemnification provision at issue – Section 2.7 – required Lessard to indemnify PDT and other parties to the contract against liability for damage caused by the other parties, including in this case the owner's and other contractors' sole negligence. Section 2.7 provides that Lessard shall indemnify the owner and PDT for "any and all losses, liabilities, expenses, claims, fines and penalties, costs and expenses, including, but not limited to reasonable attorneys' fees and court costs relating to the services performed by the Architect[.]" This indemnity obligation makes no exception for cases in which the negligence of the Owner or PDT Builders (the Owner's Developer) is the sole cause of the liabilities and claims that arise. The indemnity obligation only requires that the liability "relat[e] to" Lessard's services, a low bar that could lead Lessard to indemnify PDT for PDT's own negligence. Indemnification of a party for that party's own negligence is precisely the situation forbidden by § 11-4.1.

In sum, because Section 2.7 of the Agreement, the indemnification provision, required Lessard, as a contractor, to indemnify the owner of the building and PDT for the owner's and PDT's sole negligence, the provision is void pursuant to § 11-4.1. And because of the Supreme Court of Virginia's holding in *Uniwest*, Section 2.7 must be invalidated in its entirety, and so Lessard was under no duty to indemnify PDT based on Section 2.7 of the Agreement. Accordingly, count I, which alleges breach of Section 2.7, must be dismissed.[5]

Seeking to avoid dismissal of its breach of contract claim, Travelers argues, for the first time in its pleadings, that Lessard also breached the Agreement with PDT by failing to procure

---

[5] Defendant also argues in its motion to dismiss (i) that subrogation to a claim for breach of contract is unavailable to plaintiff because Lessard and PDT were equally culpable for defense costs and therefore the equities do not favor a reallocation of defense costs from plaintiff to Lessard, and (ii) that plaintiff cannot allege damages resulting from any breach of the indemnity agreement because PDT (and therefore plaintiff) has been fully compensated for fees resulting from the Humphreys Litigation. Because the indemnity provision on which plaintiff relies is void, these questions are neither reached nor decided.

10

insurance in accordance with Section 2.5 of the Agreement. Section 2.5 required Lessard to maintain insurance that would cover PDT Builders and its affiliates and agents, including General Liability and Professional Liability insurance. Compl. ¶ 20. Section 2.5.1 required Lessard to purchase Commercial General Liability Insurance with limits of not less than $2,000,000 per occurrence/$5,000,000 per project naming Northwestern Mutual, PDT Builders, and their wholly owned affiliates and agents as additional insureds. Compl. ¶ 23. The Complaint alleges that Lessard initially did not purchase the insurance as required, Compl. ¶ 42, and even after Lessard purchased insurance, that insurance did not cover PDT Builders with respect to the Humphreys Litigation. Compl. ¶ 43.

The problem with this breach of contract theory is simply that it was not alleged in the complaint. To be sure, the complaint refers to the failure to purchase insurance and incorporates the paragraphs including the alleged failure to purchase insurance as required by the Agreement, but the allegations related to breach of contract relate only to Lessard's "duty to defend and indemnify the Penrose entities." Compl. ¶¶ 66-67. The breach of contract allegations do not cover the failure to purchase insurance. Furthermore, there is no allegation that Travelers suffered any particular harm as a result of the breach of the insurance provisions of the Agreement.

Travelers raised this breach of contract theory for the first time in its opposition to Lessard's motion to dismiss, and because parties cannot amend their complaints through their oppositions, *Campbell ex rel. Equity Units Holders v. Am. Int'l Grp., Inc.*, 86 F. Supp. 3d 464, 472 n.9 (E.D. Va. 2015) (internal quotation marks and citation omitted), Travelers' new breach of contract theory is not properly alleged in the complaint. Accordingly, Travelers' new and tardy breach of contract theory does not save count I as it is in its present form, and that count

must still be dismissed, albeit with leave for Travelers to amend to plead a breach of contract claim if it is able to do so consistent with Rule 11, Fed. R. Civ. P.

**B.**

Travelers concedes in its briefing that its quantum meruit claim fails as a matter of law. Under Virginia law, "[w]here service is performed by one, at the instance and request of another, and nothing is said between the parties as to compensation for such service, the law implies a contract that the party who performs the service shall be paid a reasonable compensation therefore [by the requesting party]." *Mongold v. Woods*, 677 S.E.2d 288, 292 (Va. 2009). To plead a claim for quantum meruit adequately, Travelers must allege facts to support (i) that PDT performed services, (ii) at Lessard's request and instance, (iii) that have gone uncompensated by Lessard. *Id.*

As Travelers' concession relating to the quantum meruit claim reflects, the complaint fails to allege any facts regarding PDT's services to Lessard. Instead, the complaint alleges that Travelers "rendered valuable services to PDT Builders . . . that should have been performed by Lessard." Compl. ¶ 72. Because the complaint does not allege that PDT rendered uncompensated services to Lessard, the complaint does not plead a claim for quantum meruit on behalf of PDT. The complaint also fails to allege that Travelers was acting at Lessard's "instance and request" as would be required for Travelers to allege an implied contract between Travelers and Lessard. Finally, Travelers' claim fails because the provision of payment to a third party, in this case Travelers' payment of lawyers to defend PDT, is not a service with the kind of independent value that gives rise to a quantum meruit claim. In sum, Travelers' quantum meruit claim fails on multiple grounds and must be dismissed.

An appropriate Order shall issue.

/s/
T. S. Ellis, III
United States District Judge